United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Danilo Hospitality, LLC, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-22785-Civ-Scola |
| | ) |
| Batch, The Cookie Company LLC, | ) |
| Defendant. | ) |

## Order Denying Motion to Dismiss

Danilo Hospitality, LLC—the owner of the "BATCH GASTROPUB," "BATCH NEW SOUTHERN KITCHEN & TAP," and "BATCH HOSPITALITY GROUP" trademarks—complains that Defendant Batch, The Cookie Company, LLC, is infringing its marks. (Compl., ECF No. 1.) In its complaint, Danilo sets forth six counts: federal trademark infringement under 15 U.S.C. § 1114(1) (count one); federal trademark infringement, unfair competition, and false designation of origin under 15 U.S.C. § 1125(a) (count two); trademark infringement under Florida law (count three); unfair competition under Florida law (count four); and cancellation of The Cookie Company word and design marks (counts five and six). (*Id.*) In response, The Cookie Company says that Danilo's complaint should be dismissed based on its failure to state a claim. (Def.'s Mot., ECF No. 14.) In opposition, Danilo stands on its complaint's allegations, insisting the complaint sets forth enough factual matter to establish that its claims are plausible. (Pl.'s Resp., ECF No. 21.) The Cookie Company has timely replied (Def.'s Reply, ECF No. 22) and the issue is ripe for review. After carefully reviewing the record, the briefing, and the relevant legal authorities, the Court agrees with Danilo and **denies** the motion to dismiss (**ECF No. 14**).

### 1. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff must articulate

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (cleaned up). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).

## 2. Background[1]

Danilo owns three well-known restaurants in South Florida—in Miami, Delray Beach, and West Palm Beach—and one that, at the time of the complaint's filing, was scheduled to open soon, in Fort Lauderdale. (Compl. ¶ 1.) Danilo says these restaurants are commonly known and referred to as "BATCH." (*Id.*). Indeed, the signage at both the Miami and Delray Beach locations reads "BATCH Gastropub." (*Id.* ¶¶ 16–17.) On both signs, the word "BATCH" can be fairly said to overshadow the word "Gastropub." (*Id.* ¶¶ 16–17.) The signage at the West Palm Beach location reads, "BATCH New Southern KITCHEN & TAP," with three stars inserted between the words "Southern" and "KITCHEN." (*Id.* ¶ 18.) While the word "BATCH" is certainly emphasized in the West Palm Beach sign, it does not dominate that sign as it does at the other

---

[1] This background is based on the allegations the Plaintiff presents in its complaint. For the purposes of evaluating the Defendant's motion, the Court accepts the Plaintiff's factual allegations as true and construes the allegations in the light most favorable to it per Federal Rule of Civil Procedure 12(b)(6).

locations. (*Compare id.* ¶¶ 16–17 *with* ¶ 18.) Danilo has federally registered the trademark "BATCH GASTROPUB" and has trademark applications pending for the marks "BATCH NEW SOUTHERN KITCHEN & TAP" and "BATCH HOSPITALITY." (*Id.* ¶¶ 2–3.) Danilo has been continuously using its "BATCH GASTROPUB" mark in commerce since at least 2013. (*Id.* ¶ 15.)

     At the center of Danilo's claim is The Cookie Company's overlapping use and trademark, since August 2019, of the word "Batch" in promoting and selling its desserts and baked goods. (*Id.* ¶ 41–42.) Danilo intermittently refers to The Cookie Company as a restaurant, throughout its complaint, but it doesn't appear, from the complaint, that The Cookie Company sells anything other than baked goods (*Id.* ¶ 42 ("desserts and baked good"); ¶ 44 (picturing chocolate-chip cookie associated with trademark registration); ¶ 45 ("desserts, baked goods"); ¶ 48 ("chocolate chip cookies"); ¶ 50 ("desserts").) The Cookie Company has federally registered word and design marks for "BATCH THE COOKIE COMPANY." (*Id.* ¶ 43.) Of particular concern to Danilo are two of The Cookie Company's brick-and-mortar locations. (*Id.* ¶¶ 46–47.)  One of those stores, in Plantation, Florida, prominently features the word "BATCH" at the entrance to the business. (*Id.* ¶ 46.) And the Cookie Company's other location, in Fort Lauderdale, is less than a mile away from where Danilo plans to open its fourth location. (*Id.* ¶ 47.) The Cookie Company also apparently has "restaurants" where it displays its baked goods on tables or "cooking stations" emblazoned with the word "Batch." (*Id.* ¶ 50.)

     In contrast, Danilo's business, according to the webpage links provided in the complaint, involves full-service restaurants, that offer a broad range of southern fare and their famous "garden-to-glass cocktails." (*Id.* ¶ 19 (citing *Best of South Florida*, https://www.newsbreak.com/@best-of-south-florida-563172/ 2293327537925/batch-southern-kitchen-tap-to-open-third-location-in-fort-lauderdale (last visited Mar. 3, 2022).) On its own website for its locations in Miami and Delray, Danilo describes its BATCH restaurants as "your friendly neighborhood gastropub and go-to for a locally-sourced approachable menu and expansive drink list." (Compl. ¶ 28 (citing *Batch Gastropub*, www.batchgastropub.com (last visited Mar. 3, 2022).) The website for the West Palm Beach and Ft. Lauderdale locations says, "Batch New Southern Kitchen & Tap is a modern casual dining restaurant & bar featuring a scratch-cooked, locally sourced new southern culinary menu and garden-to-glass cocktails." (Compl. ¶ 28 (citing *Batch Southern Kitchen*, https://www.batchsouthern kitchen.com (last visited Mar. 3, 2022).) The websites advertise the locations as being open for lunch, dinner, and brunch. *Batch Gastropub*, www.batchgastropub.com (last visited Mar. 3, 2022); *Batch*

*Southern Kitchen*, https://www.batchsouthernkitchen.com (last visited Mar. 3, 2022).

In drawing a comparison between itself and The Cookie Company, Danilo highlights that, as part of Danilo's restaurant offerings, it also offers desserts, including "brownies, 'blondies,' crème brulee, ice cream, smores waffles, cinnamon rolls, pies, pudding, and donuts." (Compl. ¶ 20.)  In addition to those apparently regularly offered dessert items, Danilo also says that one its locations also offered and promoted, at some point, chocolate chip cookies and vegan cookies. (*Id.* ¶ 21.) These cookies could either be purchased a la carte or, in association with a promotion, were provided with the purchase of certain meals. (*Id.*) Danilo's cookies have received rave reviews from restaurant patrons as well as from *The Miami New Times*, which recognized Danilo's restaurants' cookies as one of "The Ten Best Cookies in Miami." (*Id.* ¶¶ 23, 25.) In promoting its cookie offerings, Danilo once published "Happy National Chocolate Chip Cookie Day" on the Facebook page for its Delray location. (*Id.* ¶ 24.) Also, at one of the social events Danilo says showcased its use of the BATCH mark—the "Lebron Jersey Trade-In at Batch Gastropub," at the Miami location—Danilo points out that its customers were offered "s'mores." (*Id.* ¶ 34.)

The other similarities Danilo identifies involve the two company's virtual presences. In addition to advertising on Facebook, Instagram, and Twitter, Danilo also touts the appearance of its BATCH restaurants on popular food websites (like www.tvfoodies.com), television programs (like "The Cooking Channel), and local publications (like *The Miami New Times*). (Compl. ¶¶ 29, 31.) Danilo additionally operates its restaurants through food-delivery platforms, identifying UberEats and Grubhub, in particular. (*Id.* ¶ 30.) Further enhancing their presence in the community, Danilo's BATCH restaurants have hosted numerous social, legal, and charity-related events. (*Id.* ¶¶ 33–38.) By way of comparison, The Cookie Company also has a presence online, as well as on social-media platforms like Instagram and Facebook. (*Id.* ¶ 49.) Indeed, Danilo says that consumers have tagged Danilo's restaurants in social-media posts when, in actuality, the posts pertain to The Cookie Company's goods, bearing the word "Batch." (*Id.* ¶ 61.) And, like Danilo, The Cookie Company also makes use of certain food-delivery sites, although it appears to use only Doordash, rather than UberEats or Grubhub. (*Id.* ¶ 48.)

### 3. Discussion

The Cookie Company submits that Danilo's complaint fails to plausibly allege claims for trademark infringement, false designation of origin, or violations of Florida law. (Def.'s Mot. at 7.) According to The Cookie Company, Danilo alleges neither (1) that its mark was used by The Cookie Company in

commerce, nor (2) that the use was likely to cause confusion, cause mistake, or deceive. (*Id.* at 10.) Although the Court agrees that many of Danilo's allegations as to the likelihood of confusion are conclusory, often bereft of actual factual underpinnings, Danilo has nonetheless alleged just enough to cross the line from possible to plausible.

The parties agree that, "[i]n order to prevail on a trademark infringement claim based on a federally registered mark, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007). The parties also agree that courts in the Eleventh Circuit look to seven different factors in assessing whether a likelihood of consumer confusion exists:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016). Where the parties part ways is whether Danilo has alleged enough facts to show that a likelihood of confusion is plausible. The Cookie Company, in evaluating each factor, insists that Danilo's complaint is wholly devoid of facts that would show that any of the factors weighs on the side of confusion. While the Court agrees that many of Danilo's allegations miss the mark, for a myriad of reasons, it nevertheless finds Danilo has alleged enough to get it past dismissal.

### A. Strength of the Mark

Of the seven factors, the first (the mark's strength) and the last (actual confusion), are the most important. *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Beginning with the first factor, The Cookie Company argues that the weakness of the allegedly infringed mark weighs heavily in The Cookie Company's favor. (Def.'s Mot. at 16.) While Danilo's allegations might not set forth enough from which the Court could infer that the mark is of the strongest order, it has alleged at least some strength to its mark. Indeed, even The Cookie Company acknowledges that the mark has something beyond zero strength when it concedes that the mark is, at worst, "very weak." (*Id.* at 12.) And so, even if the Court fully credited The

Cookie Company's position—which it does not—at most the Court would conclude only that the dearth of factual allegations regarding the mark's distinctiveness resulted in only a marginal, if not negligible, likelihood of conclusion. But this certainly would not amount to finding that this factor actually militates *against* a finding of a likelihood of confusion, as The Cookie Company urges.

And, indeed, there are at least some factual allegations from which the Court can discern some measure of strength in the allegedly infringed mark. In assessing the strength of a mark, a court must assess it in two ways. First, courts classify the mark as either "generic," "descriptive," "suggestive," or "arbitrary," based on the relationship between the mark and the service or good it describes. *Florida Int'l Univ.*, 830 F.3d at 1256. Arbitrary marks are considered the strongest and generic, the weakest. *Id.* at 1256–57. "Then, after categorizing the nature of the mark, the factfinder considers the degree to which third parties make use of the mark. The less that third parties use the mark, the stronger it is, and the more protection it deserves." *Id.* at 1257 (cleaned up).

The marks Danilo identifies in its complaint as being infringed are: "BATCH GASTROPUB"; "BATCH NEW SOUTHERN KITCHEN & TAP"; and "BATCH HOSPITALITY GROUP." While the words "gastropub" and "hospitality group" are arguably generic, in the context of this case, the addition of the word "batch" surely knocks the marks out of that category. *See, e.g., id.* at 1256 (noting that generic marks "refer to a class of which an individual product is a member (for example, 'liquor store' used in connection with the sale of liquor"). And so, on this basis alone, as a starting point, at worst, Danilo's marks are at least in the descriptive category.

Furthermore, Danilo has provided pictures, showing that the word "BATCH" dominates most of its locations' signage and marketing efforts. (Compl. ¶¶ 16–17, 21, 24, 37–38.) As can fairly be gleaned from the complaint and the websites Danilo provides among its allegations, Danilo provides restaurant goods and services at its South Florida "full service, dine-in sports bar/gastropub[s]." (Def.'s Mot. at 6 (cleaned up).) Of particular concern to Danilo, is the use of the word "BATCH" in conjunction with its and The Cookie Company's offering of cookies. (*E.g.*, Compl. ¶¶ 21–25.) Despite these facts, The Cookie Company insists Danilo has failed to set forth any facts from which the Court could possibly conclude that the mark "BATCH GASTROPUB" is in any way suggestive. (Def.'s Mot. at 12.) The Court disagrees. "Suggestive marks suggest characteristics of the goods and services and require imaginative effort by the consumer in order to be understood as descriptive (such as "penguin" being applied to refrigerators)." *Florida Int'l Univ.*, 830 F.3d at 1256. With that

definition in mind, construing the complaint's factual allegations in the light most favorable to Danilo, as the Court must, and relying on its "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, the Court has no difficulty inferring that the marks at issue here are plausibly, at a minimum, suggestive.

Next, The Cookie Company points to what it views as abundant evidence of rampant third-party use of the word "BATCH." (Def.'s Mot. at 12–14.) According to The Cookie Company, the "ubiquitous" "use of the word 'batch' by third parties" dooms Danilo's case. (*Id.* at 13.) As an initial matter, the Court declines to take judicial notice of the United States Patent and Trademark Office records that The Cookie Company relies on to prove its point. While a court may consider a document attached to a motion to dismiss, without converting the motion into one for summary judgment, that document must not only be undisputed, but it must also be "central to the plaintiff's claim." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). While The Cookie Company may view the USPTO's document as central to its argument for dismissal, it has not presented any convincing argument that the document is central to Danilo's claims—and, indeed, The Cookie Company acknowledges that Danilo failed to reference third-party use in its complaint. (Def.'s Mot. at 13.)

As for The Cookie Company's position that this failure—to affirmatively allege the infrequency of third-party use—is fatal to an inference that Danilo's marks are strong, the Court also disagrees. Conceptually, the Court finds The Cookie Company's position, that Danilo is required to proactively allege the *absence* of the third-party use, akin to requiring a plaintiff to proactively plead the absence of potential affirmative defenses or the inability of a defendant to come forward with evidence contrary to the plaintiff's claims. While certainly, "the extent of third-party use of a mark is an essential factor in determining a mark's strength," *Florida Int'l Univ.*, 830 F.3d at 1257, without more, the Court declines to impose a pleading requirement, obliging a plaintiff to set forth facts showing a dearth of third-party use, in its complaint, in order to allege that its mark has at least some strength.

### B. Actual Confusion

"Evidence of confusion by actual or potential customers is, of course, the best evidence of a likelihood of confusion." *Id.* at 1264. The Cookie Company complains that Danilo's complaint "is devoid of factual allegations of actual confusion." (Def.'s Mot. at 20.) Continuing, The Cookie Company's position appears to be that, without such allegations, Danilo cannot show any likelihood of confusion. (*Id.* at 22; Def.'s Reply at 7 (submitting that a plaintiff

must "allege, at minimum, facts generally describing the frequency of instances of confusion relative to volume of sales, the nature of the confusion[, and] the types of people who claim they were confused").) The Court finds The Cookie Company's position flawed.

To begin with, just because actual confusion might often be the *best* evidence to show a likelihood of confusion, it does not follow that such evidence is *necessary* to show a likelihood confusion. *See Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 04-22646-CIV, 2005 WL 8166086, at *3 (S.D. Fla. Feb. 7, 2005) (Ungaro, J.) (finding a "lack of [actual confusion] evidence is not fatal to a claim for trademark infringement"). And, since such evidence is, ultimately, not required for a plaintiff to ultimately prove its trademark-infringement claim, then it certainly is not required to be alleged at the pleading stage. Secondly, in any event, Danilo alleges, in its complaint, that consumers have tagged Danilo's restaurants in various social-media posts, when, in actuality, those posts pertain to The Cookie Company's goods, bearing "Batch" as a mark. (Compl. ¶ 61.) Reading this allegation in the light most favorable to Danilo, the Court finds this to be at least some indication that there is actual confusion between the two entities and their goods.

Ultimately, then, although the factual allegations do not imply that this factor weighs heavily in Danilo's favor, they certainly do not indicate this factor weighs *against* Danilo. At worst, this factor would be neutral; at best it weighs, even if just so slightly, in Danilo's favor.

### C. Factors Two Through Four

The Cookie Company alleges that the factors relating to the similarities of the marks, the goods and services the marks represent, and the parties' trade channels and customers (factors two through four, respectively) all weigh heavily against a finding of a likelihood of confusion. (Def.'s Mot. at 18–19.) The Court disagrees.

As for the marks themselves, relevant to the second factor, The Cookie Company maintains (1) Danilo's allegations reveal that the parties are not using the "exact same trademark"; (2) "the marks are patently dissimilar in sound, appearance, and as to the goods and services they promote"; and (3) Danilo's use of the word "Gastropub" and The Cookie Company's use of the words "The Cookie Company," in association with their respective offerings, either thoroughly eliminates or at least substantially reduces any likelihood of confusion. (*Id.* at 16–18.) The Court finds the arguments unavailing.

First, marks need not be identical in order to be deemed similar. *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1165 (11th Cir. 1982) (recognizing that an evaluation of similarity between marks "must be

based on the overall effect of the designs, not on individual features"). Second, based on the pictures of the marks, presented in the complaint, the Court cannot agree that they are "patently dissimilar." For example, Danilo provides pictures of the signage outside both its Miami and the Delray locations:

 

(Compl. ¶¶ 17–18.) To compare, Danilo also includes a picture of the storefront at The Cookie Company's Plantation location:



(*Id.* ¶ 46.) On all three signs, the word "Batch" is prominently displayed. And while the styles and font of the lettering differ, they are not so distinct as to appear "patently dissimilar" as The Cookie Company urges. These pictures also demonstrate that Danilo's use of the word "Gastropub," in its marks and signage, and The Cookie Company's use of the words "The Cookie Company,"

do not eliminate or necessarily even substantially reduce the likelihood of confusion.

Similarly, the Court disagrees with The Cookie Company's extreme position that, as to the third factor, there is zero similarity between the goods and services provided by the parties. While the parties' offerings are by no means identical, complete uniformity is certainly not required: to be sure, "[i]t is sufficient if the goods are related." *BellSouth Corp. v. Internet Classifieds of Ohio*, 1:96-CV-0769-CC, 1997 WL 33107251, at *16 (N.D. Ga. Nov. 12, 1997) (cleaned up) (quoting *E. Remy Martin & Co., S.A. v. Shaw-Ross Intern. Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (recognizing the relatedness between cognac and brandy, on the one hand, and wine, on the other, as well as the relatedness between scotch whisky and beer). Regardless, here, Danilo alleges it has "offered and promoted cookies on its menu (such as chocolate chip cookies and vegan cookies), whether for purchase a la carte, or as a promotional item when a customer purchases a meal." (Compl. ¶ 21.) Danilo has also reproduced several reviews of its restaurants where customers pointedly rave about the various cookie offerings. (*Id.* ¶ 23.) The Cookie Company, as its name would suggest, in turn, focuses its business on the sale of cookies. (Def.'s Mot. at 18.) At bottom, The Cookie Company's insistence that there is no similarity whatsoever between the parties' goods and services simply falls flat. Danilo's rights to trademark protection are not limited only to the specific goods and services on its registration—bar and restaurant services or gastropub—but can, instead, "extend to any goods related in the minds of consumers in the sense that a single producer is likely to put out both goods." *E. Remy Martin & Co.*, 756 F.2d 1525, 1530 (11th Cir. 1985).

Relatedly, The Cookie Company also insists the parties' trade channels and target customers, as to the fourth factor, "could not be more separate." (Def.'s Mot. at 19.) Again, the allegations in the complaint undermine The Cookie Company's extreme stance. This factor "takes into consideration where, how, and to whom the parties' products are sold." *Emcyte Corp. v. Xlmedica, Inc.*, 2:19-CV-769-JES-NPM, 2021 WL 1751297, at *5 (M.D. Fla. May 4, 2021). And, much like the third factor, "the parties' outlets and customer bases need not be identical, but some degree of overlap should be present for this factor to support a finding of likelihood of confusion." *Florida Int'l Univ.*, 830 F.3d at 1261. A review of the complaint reveals Danilo's allegations set forth enough facts from which the Court can infer enough overlap to find this factor weighs, at least a little, in favor of a likelihood of confusion. First, the complaint alleges that both parties have locations in South Florida, two of which are less than one mile from each other. (Compl. ¶¶ 16–19, 46–47.) And, second, both parties sell their goods through online or mobile food-delivery applications as well as

through brick-and-mortar locations. While the Court certainly expects The Cookie Company to point out the differences, at a more detailed level, as this case progresses, the facts alleged, at this point, are enough from which the Court can infer some plausible overlap.

In sum, not only has The Cookie Company failed to convince that these three factors weigh heavily in its own favor, but the Court finds, if anything, Danilo alleges enough to allow the Court to infer that these factors plausibly lean, even if only somewhat, in favor of a likelihood of confusion.

### D. Factors Five and Six

The Cookie Company next concedes that both factors five and six—the similarity of advertising media and the alleged infringer's intent, respectively—are neutral or at least "cannot be weighed in favor of likelihood of confusion." (Def.'s Mot. at 19–20.) Because the Court finds that Danilo has alleged enough to show that, to varying degrees, the other five factors, combined, weigh in favor of plausibly finding a likelihood of confusion, it declines to address The Cookie Company's arguments on these points.

### 4. Conclusion

Because the Court finds that Danilo has alleged enough for the Court to infer a plausible likelihood of confusion, it also denies The Cookie Company's motion to the extent it argues the complaint fails to set forth facts showing The Cookie Company's use in commerce of a confusingly similar mark. Additionally, to the extent The Cookie Company's bases to dismiss counts two through six are also premised on its position that Danilo has failed to allege a plausible likelihood of confusion, those arguments also fail. The Court also finds no support for The Cookie Company's grievances as to Danilo's failing to properly plead its claim under count two. And, to the extent there may have been any confusion, the Court is satisfied that Danilo's response to The Cookie Company's motion adequately addresses The Cookie Company's concerns.

For the reasons set forth above, the Court **denies** The Cookie Company's motion to dismiss, in its entirety (**ECF No. 14**) and orders it to respond to the complaint on or before **March 14, 2022**. While The Cookie Company will no doubt come forward with plenty of evidence it believes will easily rebut Danilo's allegations, as to a showing of a likelihood of confusion, for now Danilo's complaint alleges enough to nudge its "claims across the line from conceivable

to plausible." *Twombly*, 550 U.S. at 570.

**Done and ordered** in chambers at Miami, Florida on March 4, 2022.

Robert N. Scola, Jr.
United States District Judge